IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FADILA ADEMI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. |
| ) | |
| ARAMARK CAMPUS, LLC, a Delaware Limited ) | |
| Liability Company, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT AND JURY DEMAND**

NOW COMES the Plaintiff, **FADILA ADEMI**, by and through her attorneys, Law Offices of Heller Trakhtman & Associates, and for her Complaint against Defendant, **ARAMARK CAMPUS, LLC, a Delaware Limited Liability Company** (hereinafter referred to as "ARAMARK"), states as follows:

**JURISDICTION AND VENUE**

1. This action arises under and jurisdiction is founded on, 28 U.S.C. §§ 1331 and 1343 (4); and 42 U.S.C. § 2000e-2 et seq. as amended, the Civil Rights Act of 1991.

2. Declaratory and injunctive relief, damages and other appropriate legal and equitable relief are sought pursuant to Title VII, 42 U.S.C. § 2000e-2 et seq. as amended.

3. Plaintiff has complied with all statutory prerequisites to her Title VII claim, having filed a Charge of Discrimination against Defendant with the Illinois Department of Human Rights ("IDHR") on January 26, 2011, a copy of which is attached to this Complaint as Exhibit A.

1

4. The Illinois Department of Human Rights forwarded a copy of the Charge of Discrimination to the U.S. Equal Employment Opportunity Commission and Plaintiff received an EEOC Notice of Charge Filed, a copy of which is attached to this Complaint as Exhibit B.

5. A Notice of Dismissal for Lack of Substantial Evidence was sent to Plaintiff on September 11, 2012, a copy of which is attached to this Complaint as Exhibit C.

6. Plaintiff mailed her Request for Review to the Illinois Human Rights Commission on December 12, 2012 with a copy of the Department of Human Rights Investigation Report, copies of which are attached to this Complaint as Exhibit D.

7. On January 3, 2013 an Order was entered by the Executive Director of the State of Illinois Human Rights Commission granting Petitioner/Plaintiff until February 6, 2013 to file her Request for Review. A copy of the Order is attached to this Complaint as Exhibit E.

8. On January 24, 2013, the U.S. Equal Opportunity Commission mailed its Dismissal and Notice of Rights to Plaintiff, a copy of which is attached to this Complaint as Exhibit F.

9. Plaintiff filed her Request for Review and Request for Extension of Time to Possibly File Supplemental Argument and Supplemental Material in Support Thereof on February 6, 2013, a copy of which is attached to this Complaint as Exhibit G.

10. Plaintiff filed her Supplemental Argument and Supporting Material with the Human Rights Commission on March 29, 2013, a copy of which is attached to this Complaint as Exhibit H.

11. On April 11, 2013, the Department of Human Rights filed its Response to Request for Review with the Human Rights Commission, a copy of which is attached to this Complaint as Exhibit I.

12. On November 30, 2018 an Order was entered by the State of Illinois Human Rights Commission vacating and remanding the dismissal of Counts A, G, M, S and Y of the Petitioner/Plaintiff's Charge to the Illinois Department of Human Rights with a finding of Substantial Evidence. A copy of the Order is attached to this Complaint as Exhibit J.

13. The Illinois Department of Human Rights mailed a Notice of Substantial Evidence as to Counts A, G, M, S and Y to Plaintiff's attorney on December 6, 2018, a copy of which is attached to this complaint as Exhibit K.

14. Venue is proper in this Judicial Circuit under 28 U.S.C. § 1391(b) and (c) and 42 U.S.C. 2000(e)-5(f)(3) because the Defendant has offices, conducts business and/or can be found in this Judicial District and because the cause of action arose and the acts and omissions complained of occurred herein.

**PARTIES**

15. Plaintiff was employed by Defendant from 1997 to April 15, 2011 and her most recent position was Food Service Director.

16. Plaintiff is a Muslim woman who was born in Bosnia.

17. Defendant, Aramark Campus, LLC is a Delaware Limited Liability Company that provides contracted food and dining services to Loyola University at 1125 W. Loyola Avenue, Chicago, Illinois 60625. It runs residential, retail and catering services.

**FACTS COMMON TO ALL CLAIMS**

18. Plaintiff hereby incorporates paragraphs 1 - 7 as though pleaded herein.

19. Plaintiff started working for Loyola University in 1997.

20. She was originally hired as a Food Service Worker and then subsequently attended Kendall College in its Culinary Arts program.

21. When Plaintiff graduated from Kendal College, she was promoted first to Kitchen Manager in 2004 and then Food Service Director in February 2007.

22. Defendant ARAMARK took over the food services at Loyola University in 2001.

23. From 2007 on Plaintiff had an assistant as Food Service Director, as well as an office.

24. In April 2010 a new manager, Larry Weger became her direct supervisor.

25. In July 2010 Plaintiff was transferred to another building to manage the Lake Shore Dining Room (North of Devon Avenue in the City of Chicago).

26. On August 15, 2010 a new manager, Amy Trujillo, became her supervisor.

27. Up until August 15, 2010, Plaintiff did not view that she was being discriminated against. She thought it was just the way the business was being conducted and that she was being treated similarly to others.

28. At that time, the new manager/supervisor Amy Trujillo asked in front of members of the Human Resources staff, knowing full well Plaintiff was of Bosnian ancestry, "What religion Bosnians are?" She stated, "she used to work with them and needs to know what religion are we" (Muslims).

29. On that same day, as Plaintiff was training employees, Ms. Trujillo said "You have too many employees" and that "Larry Weger hired me to fire them."

30. On August 18, 2010 Amy Trujillo told Plaintiff that Muslims are not welcome to work in Catholic colleges.

31. On August 28, 2010, an Islamic student wanted a container of food due to Ramadan (where the student for religious reasons could not eat during normal business hours). Amy Trujillo would not allow this to be done, but the Director of Operations for Loyola University, Chicago, Doug Stenfeldt sent out an email on August 29, 2010, to Amy Trujillo and Plaintiff mandating that "...consistent with past years, we will be accommodating our students observing their month of Ramadan . . . (and) allow them a carry our containers during daylight hours." Amy Trujillo still would not permit it, even over objection.

32. Plaintiff continued to train others until September 7, 2010, working 6 days a week, 12-13 hours a day in Simpson Dining Hall.

33. Plaintiff then asked for Saturdays off, due to Tai Chi training. Amy Trujillo replied she is not running business for anyone's Tai-Chi and then vindictively scheduled requiring Plaintiff to open the facility on both Saturdays and Sundays.

34. Plaintiff then requested to close instead of opening as she had a 10-year-old son (at the time) and her husband started work at 4:00 a.m. She further advised that this would only be until October as her husband planned to start a new job at that point.

35. On that same date, three Jewish students asked if there were any kosher foods and Plaintiff replied that there was "no kosher kitchen" but we can order for them.

36. After the Jewish students left, Amy Trujillo said to Plaintiff, "Fucking Jewish students, what are they doing at Catholic school?"

37. On September 7, 2010 Plaintiff was transferred to another building and was not provided any keys to the facility, no office and no required supplies. When she came to open the

5

facility that morning and had no keys and could not get in she was humiliated. She believed that Amy Trujillo was determined to make things so bad for her that she would be forced to quit.

38. On September 10, 2010, Plaintiff was hospitalized at the North Shore University HealthSystem in Skokie, Illinois for "atypical chest pain" and "anxiety." She remained in the hospital overnight, leaving on the 11th. She began seeing a psychotherapist for Depression & Post-Traumatic Stress Disorder.

39. Plaintiff was placed on short-term disability until September 18, 2010 when she met with with Larry Weger, Alma Tovar (in Human Resources) and Jim, the Director of Human Resources.

40. Upon returning home after that meeting, Alma Tovar advised Plaintiff she was going to transfer her to "Market 820" at the Loyola University campus in the center of Chicago, which was known to be closing.

41. Plaintiff protested the transfer and was told to go to "the Food Court" and she did show up there on September 19th. She worked there under Food Services Director "Julie" for a short time and then Larry Weger told Doug Stenfeldt to tell her to go to work at Market 820. Believing she had no choice but to go there, Plaintiff went even though she had no office, no computer access and was just performing miscellaneous duties none within her area of expertise.

42. Plaintiff attempted to work in this capacity but on October 29, 2010 had another period of severe anxiety and completely broke down mentally.

43. Plaintiff's therapist ordered that she not go back to work see a physician.

44. Plaintiff's physician recommended that she be placed on short-term disability through May 1, 2011.

45. Plaintiff was fired on April 15, 2011.

46. Plaintiff became aware that another Islamic woman was fired in late November 2010 or early December 2010.

47. Additionally, another Islamic woman was made to quit in August 2010 after working 15 years. The reason she was given was that she was taking classes and they would not work around them.

48. In November 2010, Chad Jackson, the Director of Catering Service, in the presence of staff of the Human Resources department, fired another Islamic woman, Refika Jakupovic, who is half-Serbian and worked in the catering department. She was told her job no longer existed, told to take her stuff and leave.

49. On December 17, 2010 Plaintiff received a text message from Vanessa Mooney (773-936-5665) a food service employee who worked for Plaintiff's replacement and the message stated as follows: "I always told you God don't like ugly and I heard they ran your ass crazy. Good that is what you get. Doug next."

50. That it was Respondent's policy, through supervisor Amy Trujillo, to make employment so difficult for Muslims, that they would quit or be fired.

51. That Plaintiff never, in all her years working at Loyola University and for Respondent, was advised she was not qualified for any position she was in, or that my work was anything but satisfactory until August 2010.

52. Plaintiff was treated differently, as described above, from August 15, 2010 until she was fired, from other similarly situated individuals who were not members of the protected class, meaning who were not Muslims.

## TITLE VII and 42 U.S.C.A. § 2000e-2 RELIGIOUS DISCRIMINATION

53. Plaintiff hereby incorporates paragraphs 1-52 as though pleaded herein.

54. The above-referenced actions constituted unlawful religious discrimination in violation of Title VII and 42 U.S.C.A §2000e-2.

55. The conduct of Defendant with respect to Plaintiff constituted malice and reckless indifference to the federally protected rights of the Plaintiff.

56. As a proximate result of the practices alleged, the Plaintiff has suffered and will continue to suffer substantial and irreparable injury, loss of income, and other monetary benefits, and other damages.

## TITLE VII and 42 U.S.C.A. § 2000e-2 RETALIATION

57. Plaintiff hereby incorporates paragraphs 1-56 as though pleaded herein.

58. In response to her complaints of discrimination, Plaintiff was subjected to the adverse actions described above, and retaliated against in violation of Title VII and 42 U.S.C.A §2000e-2.

59. Through its actions, Defendant acted with malice and reckless indifference to the federally protected rights of the Plaintiff.

56. As a proximate result of the practices alleged, the Plaintiff has suffered and will continue to suffer substantial and irreparable injury, loss of income, and other monetary benefits, and other damages.

WHEREFORE, Plaintiff prays the following:

A. Trial by jury on the charges raised in her Complaint;

B.     That a declaratory judgment be issued that Plaintiff's rights have been violated as alleged above and that the practices complained of herein are unlawful and violative of the acts cited;

C.     That this Court permanently enjoin Defendant, its agents, successors, officers, employees and attorneys and those acting in concert with them from engaging in each of the unlawful practices set forth herein, and from continuing any and all other practices shown to be in violation of applicable law;

D.     That this Court order Defendant to provide Plaintiff with front pay, any and all lost benefits and back wages with pre- and post-judgment interest;

E.     That this Court award Plaintiff compensatory damages for emotional distress caused by Defendant;

F.     That this Court award Plaintiff punitive damages sufficient to punish and deter continuation of Defendant's unlawful employment practices;

G.     That this Court award Plaintiff the costs and disbursements of this action and reasonable attorney's fees; and

H.     That this Court award Plaintiff such other relief as this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.

                                              Respectfully submitted,
                                              FADILA ADEMI,

                                    By:     /s/    Andrea J. Beer
                                                    One of Plaintiff's Attorneys

Todd A. Heller (3122211)
Andrea J. Beer (6281628)
Law Offices of Heller, Trakhtman & Associates
707 Lake Cook Road, Suite 316
Deerfield, IL 60015
847-714-0300
847-714-0310 Fax
Todd@thellerlaw.com
Andrea@thellerlaw.com